*1077 OPINION OF THE COURT
Edward S. Conway, J.
This is an article 78 proceeding in which the petitioners seek an order: (1) that the proceeding be maintained as a class action by the named petitioners for the class of employees described in the petition; (2) that the determination of the respondents to hold a public hearing regarding the so-called McQueen incident was arbitrary, capricious and an abuse of discretion and, therefore, illegal; (3) that the determination of respondents to hold such public hearings was made without jurisdiction; and (4) enjoining and restraining respondents both pendente lite and permanently from holding such public hearings, or any other or further public hearings, regarding the so-called McQueen incident.
Petitioner New York State Inspection, Security & Law Enforcement Employees, District Council 82, AFSCME, AFL-CIO, is the bargaining agent for certain employees of the State of New York, including correction officers, correction sergeants and correction lieutenants. Petitioner James Mann is a correction officer employed by the New York State Department of Correctional Services (hereinafter referred to as department) at Attica Correctional Facility, who had immediate supervisory responsibility for all correction officers assigned to D block. On July 11, 1976, a team of correction officers was at cell 31, D block at the Attica facility to conduct a properly authorized search of said cell and the inmate confined therein, one Albert McQueen, who was on "keep lock” (confined to his cell for disciplinary purposes) at the time.
Inmate McQueen refused to allow his cell to be searched and petitioner Mann was called and he ordered McQueen to comply. McQueen refused and Sergeant Tiede was summoned. He in turn ordered McQueen to comply and McQueen again refused and assaulted Sergeant Tiede and other officers who entered his cell to enforce the order. During the course of the struggle several correction officers were injured and McQueen sustained cuts, abrasions and a broken jaw. Inmates in D yard observed the aforesaid incident at McQueen’s cell, yelled threats at the correction officers involved, and when D yard was closed, engaged in a fight injuring several correction officers.
The department conducted full investigations of both the aforesaid incidents. Interviews were conducted and statements *1078 were taken from correction officers, correction sergeants and correction lieutenants, McQueen and inmates who were in D yard at the time. At the conclusion of the department’s investigation the department determined that there were no grounds for disciplinary charges against any employees and none were commenced. The New York State Police, Bureau of Criminal Investigation, also conducted a full investigation into the McQueen incident and the disturbance in D yard in order to determine whether criminal charges should be brought against any individual. Both employees of the department and inmates were again interviewed. The Wyoming County District Attorney investigated the McQueen incident and the disturbance in D yard and presented evidence and testimony about these incidents to two separate Grand Juries. All correction officers who were called to testify about the McQueen incident executed waivers of immunity and testified fully before the Grand Jury. The Grand Jury returned no indictments against any correction officer, correction sergeant or correction lieutenant, but did indict three inmates as a result of the disturbance in D yard. The department found no grounds to prefer any disciplinary charges against any correction officer, correction sergeant or correction lieutenant arising out of said incident.
The New York State Commission of Correction (hereinafter referred to as commission) appointed Professor Irving Younger of Cornell Law School to conduct a public inquiry into the McQueen incident and the disturbance in D yard. The department provided Professor Younger with copies of all written statements and other documents available and required all of the correction officers to attend the hearing. On November 22 and 23, 1976, the hearings were held. Inmate testimony was given at the hearings but the correction officers refused to testify, on advice of counsel, citing their Fifth Amendment rights and objecting to the presence of television cameras at the hearings.
After the commission hearings, Professor Younger issued his report on May 20, 1977 which seemed to suggest that the correction officers, possibly with the assistance of the department, were involved in an effort to cover up and prevent the public from knowing precisely what had happened at Attica. The report further castigated the correction officers for their refusal to testify at the public televised hearings.
The department issued a news release in response to said report stating that it had conducted its own complete investí *1079 gation, that its employees had answered all questions put to them, that it had found no cause to commence disciplinary proceedings against any employee but would, nevertheless, appoint an independent hearing officer to conduct public hearings and take testimony on some of the "unanswered questions” posed by Professor Younger in his report to the commission, which charged, by innuendo, correction officers with wrongdoing and the department with a cover-up.
First of all, this court will allow this proceeding to be prosecuted as a class action, as the facts make it particularly well suited to be conducted as a class action composed of the correction officers, sergeants and lieutenants who were involved in the McQueen incident and the riot in D yard.
The petitioners herein are seeking to enjoin the appointment of an independent hearing officer, the conduct of public hearings and the interrogation of employees by inmates or their counsel. The petitioners contend that the appointment of the independent hearing officer and the conduct of public hearings are acts in excess of the jurisdiction of the department and the commission, and further, that the decision to hold public hearings was arbitrary, capricious and an abuse of discretion, and that petitioners will suffer irreparable harm if the public hearings are not enjoined.
The court must agree with the contentions of the petitioners. The Commissioner of Correctional Services or the department is limited to the powers and duties granted them by statute (Patrolmen’s Benevolent Assn. of City of N. Y. v City of New York, 41 NY2d 205, 209), and the Legislature has not seen fit to grant them the power to appoint independent hearing officers to hold public hearings. These powers are not implied powers necessary to the performance of the statutory duties of the department and the Commissioner of Correctional Services, nor are they powers that have been traditionally exercised by either.
The facts in this case have been fully and thoroughly investigated by the department, the State Police and the Wyoming County Grand Jury and the decision to hold further hearings is arbitrary and capricious and without basis in reason and therefore should be enjoined by this court.
Accordingly, the motion of petitioners enjoining the respondents from appointing an independent hearing officer and conducting public hearings is granted.